1

2                  IN THE UNITED STATES DISTRICT COURT

3                     FOR THE DISTRICT OF OREGON

4                        PENDLETON DIVISION

5
UNITED STATES OF AMERICA,        )
6                                )
                      Plaintiff, )Case No. 2:11-CV-00823-SU
7                                )
                 v.              )
8                                )
HAMMOND RANCHES, INC., an Oregon )July 26, 2013
9 Corporation,                   )
                                 )
10                    Defendant. )Portland, Oregon
   _____)
11

12

13

14                        ORAL ARGUMENT

15                   TRANSCRIPT OF PROCEEDINGS

16            BEFORE THE HONORABLE PATRICIA SULLIVAN

17        UNITED STATES DISTRICT COURT MAGISTRATE JUDGE

18

19

20

21

22

23

24

25

```
 1                        TELEPHONIC APPEARANCES

 2    FOR THE PLAINTIFF:

 3    Neil J. Evans
      United States Attorney's Office
 4    1000 SW Third Avenue
      Room 600
 5    Portland, OR 97204

 6    FOR THE DEFENDANT HAMMOND RANCHES:

 7    Brent H. Smith
      David Baum
 8    Baum Smith & Eyre, LLC
      1902 Fourth Street
 9    Suite 1
      P.O. Box 967
10    La Grande, OR 97850

11    FOR THE DEFENDANT DWIGHT HAMMOND:

12    Marc D. Blackman
      Ransom Blackman, LLP
13    1001 SW Fifth Avenue
      Suite 1400
14    Portland, OR 97204

15    COURT REPORTER:        Jill L. Erwin, CSR, RMR, RDR, CRR
                             Certified Shorthand Reporter
16                           Registered Merit Reporter
                             Registered Diplomate Reporter
17                           Certified Realtime Reporter

18
                             United States District Courthouse
19                           1000 SW Third Avenue, Room 301
                             Portland, OR 97204
20                           (503)326-8191

21                               *   *   *

22

23

24

25
```

<pre>
 1                    TRANSCRIPT OF PROCEEDINGS

 2           DEPUTY COURTROOM CLERK:  This is the United States

 3   of America v. Hammond Ranches, Inc., et al.  Civil Case

 4   No. 2:11-CV-00823-SU.  Defendant's motion for stay number 24

 5   and defendant's motion for protective order number 27.

 6   Judge Sullivan presiding.

 7        Counsel, since we're just now on the record, please

 8   state your appearances.  And let me remind you to identify

 9   yourselves each time you speak.

10        Go ahead, counsel for plaintiff.

11           MR. EVANS:  Neil Evans on behalf of the United

12   States.

13           MR. SMITH:  Brent Smith and David Baum on behalf

14   of defendants.

15           MR. BLACKMAN:  Marc Blackman on behalf of

16   Dwight Hammond.

17           THE COURT:  All right.  Counsel, thank you for

18   making yourselves available this afternoon.  I want to just

19   sort of recite where we are in this case before I hear from

20   the attorneys, and I'll tell you how -- what my

21   understanding is of the civil as well as the criminal

22   matters.

23        The case has -- the civil -- I'll start with the civil

24   complaint.  It's been stayed from October 11, 2011, until

25   January 14, 2013.  Is that correct?
</pre>

1        I'll ask Mr. Evans to respond.

2                MR. EVANS:  I don't know the specific dates, but

3    that sounds accurate, Your Honor.  I did not look at the

4    docket.

5                THE COURT:  Oh, okay.  I did, and I believe that's

6    accurate.  Discovery -- we had a conference call, I believe,

7    and the stay was lifted.  And discovery was supposed to be

8    completed by October 15th, 2013, which is still a couple of

9    months away.

10       Is it correct, Mr. Evans, that you -- the Government is

11   no longer seeking injunctive relief?

12               MR. EVANS:  We moved to dismiss and I believe it's

13   granted the dismissal of Count 10 which sought basically

14   permanent injunctive relief voiding or cancelling the

15   grazing permit.

16               THE COURT:  Okay.  The permit.  So that has been

17   dropped.  That was my next question.

18       I'm going to recite to you the claims as they appear in

19   the complaint and then, Mr. Evans, you'll correct me if I'm

20   wrong.  Okay?

21               MR. EVANS:  Yes, Your Honor.

22               THE COURT:  We have negligence claims against

23   Hammond Ranches for the 2005 Fir Creek fire, the 2006 Krumbo

24   Butte fire, the 2006 Lower Bridge Creek fire, and the 2006

25   Grandad fire; correct?

1          MR. EVANS:  Correct, Your Honor.

2          THE COURT:  We have a trespass claim against

3  Steven Hammond only for the 2005 Fir Creek fire and the 2006

4  Krumbo Butte fire; correct?

5          MR. EVANS:  Correct.

6          THE COURT:  We have a trespass claim against

7  Steven Hammond and Dwight Hammond for the 2006 Lower Bridge

8  Creek fire and the 2006 Grandad fire; correct?

9          MR. EVANS:  Correct.

10          THE COURT:  And we have trespass claims -- or

11  claim of trespass against Hammond Ranch, Inc., on the basis

12  of all of those fires; correct?

13          MR. EVANS:  Correct.

14          THE COURT:  All right.  So that's the civil

15  complaint.

16      Now, with regard to the criminal complaint, Mr. Smith,

17  I want to see if I have an understanding of what occurred.

18  And perhaps Mr. Blackman can help out with this.

19      Mr. Blackman, weren't you one of the criminal defense

20  attorneys here in Pendleton?  Hello?

21          DEPUTY COURTROOM CLERK:  Mr. Blackman?

22          THE COURT:  Hello?  Is Mr. Blackman there?

23          MR. BLACKMAN:  Yes.

24          THE COURT:  Were you one of the criminal defense

25  attorneys -- attorneys here in Pendleton?

1          MR. BLACKMAN:  We continue to represent the

2   Hammonds on the Government's appeal.

3          THE COURT:  And do you represent both Steven and

4   Dwight Hammond?

5          MR. BLACKMAN:  Only Dwight.

6          THE COURT:  Pardon?

7          MR. BLACKMAN:  Only Dwight.

8          THE COURT:  Only Dwight?  And who represents

9   Steven?

10          MR. BLACKMAN:  The criminal appeal?

11   Larry Matasar.

12          THE COURT:  He is not on the line?

13          MR. BLACKMAN:  No.  He is (indiscernible.)

14          THE COURT:  He is what?

15          MR. BLACKMAN:  He is not counsel of record in the

16   civil case.

17          THE COURT:  Okay.  But are you?

18          MR. BLACKMAN:  Yes.

19          THE COURT:  Okay.  All right.  Now, let me see if

20   I understand what the criminal matter -- the disposition of

21   the criminal matter.

22       And, Mr. Blackman, you could probably respond.

23       Although, Mr. Smith, you can respond if I've got

24   something wrong here.

25       Steven and Dwight Hammond were convicted with regard to

1   the 2001 Hardie-Hammond fire; correct?

2            MR. BLACKMAN:  Correct, yes.

3            THE COURT:  Now, is that also called the Fir Creek

4   fire?

5            MR. BLACKMAN:  No.

6            THE COURT:  Just the Hardie-Hammond fire?

7            MR. BLACKMAN:  Yes.

8            DEPUTY COURTROOM CLERK:  Your Honor?  Your Honor?

9            THE COURT:  Yes.

10           DEPUTY COURTROOM CLERK:  Could the gentlemen

11  identify themselves when they speak, because the court

12  reporter cannot identify them.

13           THE COURT:  Okay.  Yes.  Please, gentlemen, please

14  do that.

15       All right.  Now, with regard to the 2005 Fir Creek

16  fire, there's some confusion in my mind.  Was this -- were

17  the charges with regard to that fire dismissed with or

18  without prejudice?

19           MR. BLACKMAN:  This is Marc Blackman.  They were

20  included in the indictment.  The Government did not proceed

21  on that fire at the criminal trial, but it was part of the

22  overall conspiracy.

23           THE COURT:  All right.  Mr. Evans, what -- from

24  the Government's point of view, what is the disposition of

25  this -- the claims with regard to this fire in the criminal

1    matter?

2         MR. EVANS:  My understanding is that the counts

3    related to the Fir Creek fire were dismissed without

4    prejudice as to Dwight and Steven Hammond before it -- I

5    take that back.  It may have only been Steven Hammond before

6    the case went to trial.

7         THE COURT:  And so are those, then, viable, in

8    terms of bringing a prosecution based on that fire against

9    Steven Hammond?

10        MR. EVANS:  Theoretically, yes.  The statute of

11   limitations hadn't run.  Although, clearly, the AUSA decided

12   that he did not want to proceed to trial on a criminal

13   charge on the Fir Creek fire.

14        THE COURT:  And I believe it's the position of the

15   plaintiffs that that is part of their argument in terms of

16   the Fifth Amendment; correct?

17        MR. SMITH:  Your Honor, this is Brent Smith.  I'm

18   looking at the United State's motion to dismiss the Fir

19   Creek counts, and I confirm that it's -- there's no

20   indication in the docket records or in this document that it

21   was dismissed with prejudice.  Rather, it appears it was

22   dismissed without prejudice.

23        And, yes, Your Honor, part of our contention is that

24   they have a right not to make statements about this

25   particular matter, and it was charged previously and then

1    dismissed without prejudice.

2           THE COURT:  Okay.  Thank you for that

3    clarification.

4        Now, the 2006 Krumbo Butte fire resulted in a

5    conviction against Steven Hammond only; correct?

6           MR. SMITH:  This is Brent Smith.  That is correct.

7           THE COURT:  And that is -- the Government has

8    appealed the sentence in that case; is that right?

9           MR. BLACKMAN:  This is Marc Blackman.  Yes,

10   Your Honor.

11          THE COURT:  Have the defendants, Steven and Dwight

12   Hammond, appealed the convictions against --

13          MR. BLACKMAN:  No, they have not.

14          THE COURT:  All right.

15          MR. BLACKMAN:  Part of the agreement that resolved

16   the case during the middle of jury deliberations was that

17   the Hammonds would not appeal.

18          THE COURT:  Okay.  Now, with regard to the Lower

19   Bridge Creek fire in 2006 and the Grandad fire in 2006, both

20   of the criminal claims with regard to those fires ended up

21   in acquittal; right?

22          MR. BLACKMAN:  I believe the jury -- this is

23   Marc Blackman.  I believe the jury acquitted Dwight Hammond

24   and Steven Hammond of Lower Bridge Creek, and they have not

25   yet come to a conclusion, as to Steven Hammond, as to the

1    Lower Bridge Creek fire -- excuse me, the Grandad fire.

2             THE COURT:  Grandad fire.

3        So then what was the result of that?  Was that part of

4    your deal at the end?

5             MR. BLACKMAN:  Well, part of the deal was that the

6    parties would accept Judge Hogan's sentences of

7    Steven Hammond on the Krumbo Butte and the -- well, the 2001

8    fire and --

9             THE COURT:  And Steven --

10            MR. BLACKMAN:  -- and with respect to Dwight on

11   the 2001 fire.

12            THE COURT:  Okay.  So Steven was convicted of the

13   2001 fire and the Krumbo Butte fire.

14            MR. BLACKMAN:  Correct.

15            THE COURT:  And the sentences that

16   were -- Judge Hogan issued are on appeal?

17            MR. BLACKMAN:  By the Government.

18        By the Government, correct.  Okay.

19            THE COURT:  Now, the sentence against Dwight

20   Hammond is on appeal for the 2001 fire.

21            MR. BLACKMAN:  Yes.  Marc Blackman again.  By the

22   Government.

23            THE COURT:  By the Government.

24        So I'm a little bit confused about the 2006 Grandad

25   fire and what the final disposition of that -- that charge

1   is.  Is it still a viable charge that can be brought against

2   the defendants?

3           MR. BLACKMAN:  Your Honor, I wish I could give

4   you -- this is Marc Blackman.  I wish I could give you a

5   definitive answer on that.  One of the main issues on appeal

6   is whether the Government was bound to accept Judge Hogan's

7   judgment and have the case brought to an end, period, and

8   the Government has appealed that claim or at least has

9   rebutted that claim in their briefs, and the Ninth Circuit

10  at some point is going to tell us whether the Government is

11  bound or not bound.

12          MR. EVANS:  This is Neil Evans on behalf of the

13  United States.

14          THE COURT:  Yes.

15          MR. EVANS:  It's my understanding that a finer

16  point could be put on that, which is whether or not the

17  Government is bound by the sentence is a -- as to the counts

18  of conviction is a distinct question from what happened to

19  the conspiracy, Count No. 1 in the indictment, and the 2006

20  Grandad fire, counts seven and eight.  It's my understanding

21  that all three of those counts were dismissed with prejudice

22  as a result of the agreement that was entered into by

23  Mr. Blackman Mr. Matasar and the prosecutors during

24  deliberation, while the jury was still out.

25          So while Mr. Blackman may be correct that this --

1   incorrect that the sentence as to the counts of conviction

2   is being appealed and there's some question in his mind

3   about whether or not the Government is bound by the final

4   judgment, I don't think there's any open question about

5   whether or not the conspiracy count and the 2006 Grandad

6   accounts were dismissed with prejudice.

7              THE COURT:  Mr. Blackman, do you agree with that?

8              MR. BLACKMAN:  Your Honor, I do.

9              THE COURT:  You do?

10             MR. BLACKMAN:  Yes.

11             THE COURT:  Okay.  Well, thank you for indulging

12   me on this exercise, because it does have to do with my

13   questions with regard to discovery.

14       The Government has appealed these two sentences.  I

15   honestly do not see any issue with regard to discovery on

16   the 2001 fire and the appeal of that, the sentences against

17   Steven and Dwight Hammond, unless, Mr. Blackman, you can

18   convince me otherwise.

19             MR. BLACKMAN:  Your Honor --

20             THE COURT:  They have no -- there's no lawsuit

21   with regard to -- to that -- to those charges.

22             MR. BLACKMAN:  Your Honor, Marc Blackman.  If I

23   could respond?

24             THE COURT:  Yes.

25             MR. BLACKMAN:  What Mr. Evans did not address in

his memo, and Mr. Smith did in his, is that the privilege

applies not only to questions of guilt or innocence, but

also to issues of punishment, and that unless and until

punishment is final, the privilege persists, because U.S.

Supreme Court authority says a trial court in sentencing may

consider any information that is reasonably reliable in

determining a sentence that is appropriate.

So the 2001 fire, the circumstances of that and of all

the other allegations against both Hammonds that could be

construed by the Government as showing some kind of

culpability on the Hammonds, who argue for a greater

sentence, should the Ninth Circuit vacate the current

sentences, would it be used against them in violation of the

privilege against self-incrimination.

THE COURT:  And, Mr. Evans, do you disagree with

that?

MR. EVANS:  I don't disagree that the Fifth

Amendment privilege can apply leading up to sentencing.

What I disagree with, as you can tell from the pleadings, is

that, generally speaking, this very minor or relatively

small area of concern does not justify staying the entire

civil case again.  I think the issue on appeal is whether or

not the five-year mandatory minimum applies to the

particular counts of conviction.

I -- I think that the concern over whether or not we're

1   going to bring in some -- some information from 2005 or

2   2004, and I -- I don't necessarily even need to question

3   them about 2001.  As Your Honor recognized, it's not an

4   issue.

5        I don't think that's going to be an issue at

6   sentencing.  And the answer to that concern isn't let's stay

7   all of the discovery regarding the civil suit.

8             THE COURT:  Well, I understand that the defendants

9   are all asking for a fairly blanket stay.  What I try to do

10  is narrow down the issues that -- that perhaps can

11  be -- that perhaps the parties can go ahead with, in terms

12  of discovery, so that we can keep this case moving along.

13  My thought -- go ahead.

14            MR. BLACKMAN:  This is Marc Blackman.  I just want

15  to make sure the Court is aware of the U.S. Supreme Court

16  direction about this.  In *United States v. Watts*, which is a

17  519 U.S. 148 1997 opinion, the Court held a jury verdict of

18  acquittal does not prevent the sentencing court from

19  consideration conduct underlying the acquitted charge so

20  long as that count has been proved by a preponderance of the

21  evidence.  And the Ninth Circuit similarly held in *United*

22  *States v. Staten*, S-T-A-T-E-N, 466 F.3d 708, a 2006 opinion,

23  and --

24            THE COURT:  Excuse me.  466 F.3d 708?

25            MR. BLACKMAN:  Yes.

1          THE COURT:  Okay.

2          MR. BLACKMAN:  And the point is that anything a

3    defendant says about an event can be offered by the

4    Government in an effort to persuade the sentencing court,

5    who, in this case, will not be the judge who heard the

6    trial --

7          THE COURT:  No.  He's gone.

8          MR. BLACKMAN:  -- to impose a greater sentence.  I

9    think that Mr. Evans may be oversimplifying issues before

10   the Ninth Circuit.

11         For example, the Ninth Circuit might agree with us on

12   the merits, but the Eighth Amendment would be violated by

13   imposing a 60-month sentence, which is the mandatory minimum

14   in the statute, under the circumstances to Dwight Hammond,

15   whose guideline range was zero to six months, but still

16   say, well, three months was not sufficient, and remanned for

17   a new sentencing hearing, governed by the Eighth Amendment,

18   but allowing the Government to present all new evidence as

19   to what the actual sentence should be that the Court should

20   impose.

21         It's a very real problem for the Hammonds -- Dwight and

22   Steven -- where the Government was trying to get information

23   from them that it's not denying it would use if it could,

24   if -- if and when the case is remanded, the case may, in

25   fact, be affirmed, then the problem is gone unless it gets

 1    appealed with that.

 2            THE COURT:  Oh, yeah.

 3        All right.  Mr. Evans, do you have a response to that?

 4            MR. EVANS:  Yes.  I have two responses.  One,

 5    Supreme Court has also recognized that it's a difficult

 6    choice to make whether to assert the privilege or suffer

 7    maybe, perhaps in the civil case, the inference.  It's

 8    not -- that alone is not a basis for a stay.  This choice is

 9    made probably daily throughout the United States.

10        The second thing is I'm -- the purposes of going

11    forward in depositions, at least initially, I'm fine without

12    asking any questions about the 2001 fire.

13            THE COURT:  Okay.

14            MR. EVANS:  So I don't -- I don't know what the

15    concern is.  I do have mentioned in my memo -- at the very

16    end I do have some proposal, but I'll let -- clearly, the

17    Court has some idea of how you want to proceed, so

18    I'll -- I'll let that -- I'll let Your Honor speak.

19            THE COURT:  Yeah.  I will want to hear about

20    those -- those proposals from each side.  But, I think,

21    Mr. Evans, if -- regardless of any questions about the 2001

22    fire, I think -- Mr. Blackman, correct me if I'm wrong -- is

23    a concern about these other fires influencing a possible

24    increase in sentencing, a resentencing hearing.  Am I right?

25    I mean, is the -- the --

1          MR. BLACKMAN:  This is Marc Blackman.  If you're

2     addressing me, yes.

3          THE COURT:  Yes.

4          MR. SMITH:  And, Your Honor, this is Brent Smith.

5     Yes.  In the *Watts* case Mr. Blackman cited talks

6     specifically about how conduct that a person is acquitted of

7     or uncharged can come in at the sentencing.

8          THE COURT:  Wait a minute.  Let me ask you a

9     question, just for -- a factual question about that.  Were

10    those charges -- and I haven't read the

11    case -- presentencing or post sentencing?  In other words --

12    or pre-offense?  This sentencing is for the 2001 fire, and

13    these other fires took place afterwards.  And in the *Watts*

14    case I'm not sure if the other offenses were prior to the

15    offense for which the sentence was being appealed.  Do you

16    see what I'm saying?  Does that matter?

17         MR. SMITH:  This is Brent Smith.  I see what

18    you're saying, and I don't know whether the *Watts* case

19    addresses that or not.

20         THE COURT:  Mr. Blackman?

21         MR. SMITH:  Maybe Mr. Blackman does.

22         MR. BLACKMAN:  I honestly, Your Honor, do not

23    recall at this time; but I will say I don't think it matters

24    at all.

25         THE COURT:  Well, that's your opinion at this

 1   time.  I guess I'll have to read the case.

 2             MR. BLACKMAN:  Yes.

 3             THE COURT:  Because if the Court makes come kind

 4   of distinction or if the facts are distinguishable with

 5   regard to that issue, then I'll have to look at that.

 6        Now, thank you for indulging me on these questions,

 7   because this is -- this -- these issues do affect Steven and

 8   Dwight Hammond.  However, with regard to the corporation,

 9   tell me why Susan Hammond cannot be deposed as the corporate

10   agent.

11             MR. SMITH:  Your Honor, this is Brent Smith.  The

12   issue is that she intends to assert her Fifth Amendment

13   right.

14             THE COURT:  Right.

15             MR. SMITH:  She -- there obviously is not an

16   active criminal matter against her at this time; however, we

17   have a number of fires occurring over a number of years.

18   The Government, in the past, was willing to indict Dwight

19   and Steven on 19 different fires.  Many of the counts were

20   dismissed voluntarily.  Some of them they were acquitted of,

21   as the Court is aware of.  And so she, at this point in

22   time, whether she is the corporation's agent or not, she's

23   going to be asserting her Fifth Amendment right in a

24   deposition.

25             THE COURT:  Did she testify in the criminal trial?

1          MR. SMITH:  No.  So I agree that the case is

2     stronger with respect to Dwight and Steven.  There are very

3     obvious issues.  With respect to Susan, the analysis is

4     different, but there still is -- the Court still has

5     discretion when someone isn't currently charged with a crime

6     to allow a stay of the civil proceeding for a period of

7     time.

8          And in this case it's certainly possible that there is

9     danger that Susan Hammond may be indicted with a crime,

10     given the Government's prior conduct.

11          THE COURT:  Well, I just think that's really

12     speculative, Mr. Smith.  And are the women, including --

13     what's her name?  Earlyna Hammond?  Are they represented by

14     their own counsel?

15          MR. BLACKMAN:  Your Honor, this is Marc Blackman.

16     Not to my knowledge.

17          THE COURT:  And who represents the corporation?

18          MR. SMITH:  I do, Your Honor.  This is

19     Brent Smith.

20          THE COURT:  And do you represent any of the

21     individuals, Mr. Smith?

22          MR. SMITH:  At this point we do represent Dwight

23     and Steven in connection with this litigation, but none of

24     the other individuals that are discussed in the brief.

25          THE COURT:  All right.  Well, this is my concern

with regard to Susan Hammond:  I'm not -- I honestly don't

know why Earlyna Hammond would be deposed.  Can someone

illuminate me about that?

      MR. EVANS:  Well -- this is Neil Evans -- there's

some indication that she's involved in corporate affairs.  I

don't think she's an officer, but I've reviewed some

discovery and certainly, being -- being a potential witness

for the defense, I've got the right to ask her questions.

And if she says she doesn't know anything, she doesn't know

anything.  But I certainly don't want her appearing at trial

and saying, you know, I was having lunch with Steven in Bend

at the time this fire was started.

      THE COURT:  Okay.  So both of them are potential

witnesses.

      MR. SMITH:  Your Honor, may I be heard on the

issue that Mr. Evans just addressed?

      THE COURT:  Yes, of course.

      MR. SMITH:  The problem is that you have a 2006

fire where there were -- where there was a conviction of

Steve Hammond on the Krumbo Butte, on the Grandad.  Lower

Bridge Creek fire there was not a conviction.  And,

hypothetically, the Government could use this opportunity to

depose Earlyna to try and find out was she aware whether or

not Steven was involved in the Krumbo Butte fire, which he

was convicted of?  Did she have conversations with him?  We

1  don't need to go very far down that road, given the course

2  of conduct between the BLM and the Hammonds, to see that

3  there is a distinct possibility of criminal charges against

4  Earlyna Hammond.

5      And so that is why in my brief I represented to the

6  Court my understanding is if she is deposed she intends to

7  assert the Fifth Amendment right.  My point is that there is

8  a -- while it may be speculative in the sense that the

9  Government hasn't brought charges against her, the

10  Government has brought charges in connection with these

11  fires that they now want to question her about.

12          THE COURT:  All right.  Thank you, Mr. Smith.

13      But they don't have separate criminal attorneys; right?

14          MR. SMITH:  Your Honor, not that I'm aware of

15  right now, but they do have attorneys that they speak to.  I

16  don't know who represents who.  I can't really speak to

17  that.

18          THE COURT:  You know, the request is to stay the

19  civil proceedings until the resolution of the Court of

20  Appeals case or the -- the expiration of the statute of

21  limitations on the criminal matters; correct?

22          MR. SMITH:  Correct.

23          THE COURT:  By my -- by my calculation, that would

24  be two to three years for the criminal matters.

25      Now, what -- what is to say that should the Court of

1    Appeals come back with a decision tomorrow on the two

2    gentlemen, Steven and Dwight Hammond, that the -- the two

3    women, the two wives, would still not -- would still be in

4    jeopardy?

5         MR. SMITH:  That's right, Your Honor, but that

6    would present a very different question for the Court, and

7    we're not -- you know, we're -- certainly, if the Court is

8    considering staying it just pending resolution of the

9    criminal appeal, and then, you know, dealing with -- there

10   are some Fifth Amendment issues that need to be resolved at

11   that time, we can handle it that way.

12        There's certainly a much stronger case on our end for a

13   stay while this criminal appeal is pending, and I recognize

14   that.  If the Court is willing to grant that portion of the

15   motion, we can readdress Susan and the others' Fifth

16   Amendment issues after the appeal is concluded.

17        THE COURT:  Now, let me ask you this, Counsel:

18   What's the status of document discovery?  Mr. Evans?

19        MR. EVANS:  This is Neil Evans.  I served requests

20   for production on the defense on February 6th.  I had what I

21   consider to be an inadequate reply in March.  There's

22   communication on file -- written communication with Mr. Baum

23   and Mr. Smith.  In fact, I met with them in late March when

24   I was out in eastern Oregon.  To date, I still don't have

25   full responses to the request for production.  I -- you

 1   know, I don't -- unless the Court really wants me to get

 2   into detail, I think --

 3            THE COURT:  No.  I just want to know if --

 4            MR. EVANS:  We've been trying to -- I've been

 5   waiting since late June to get a final edition of a

 6   protective order, so I can disclose -- something which I

 7   agreed to sign, so I can disclose some documents to staff

 8   that I need to disclose it to.  I think it's fair to say

 9   that I don't think we're going to meet that October 15th

10   deadline.  But, as the Court can probably tell, if the stay

11   was lifted on January 14th, I served a request for

12   production three weeks later and was ready to go.  And

13   initially we thought we would have depositions in June, but

14   because of what I consider to be a lack of response, we're

15   still waiting.

16            THE COURT:  Okay.  Now, from the other side,

17   Mr. Smith?

18            MR. SMITH:  Thank you, Your Honor.  This is

19   Brent Smith.  We have had problems in producing discovery.

20   I think Mr. Evans would agree that he and I are trying to

21   work through those issues.  We -- we have similar

22   dissatisfaction with some of the -- the Government's lack of

23   production, and we're trying to work through those.  But the

24   problem, just so the Court is aware, is that much of the

25   ground that we're trying to cover was already covered in the

1    criminal matter.  As a result, you know, we have had

2    thousands and thousands of pages which we have to figure out

3    whether or not they were previously produced or not and

4    whether or not it's work product, and Mr. Evans is -- the

5    Government's response is to -- some of our discovery

6    requests have been essentially, "You already have that

7    because it was produced in the criminal case."

8         And so we're trying to find a way to -- to make sure

9    that discovery is complete and we have everything, and we

10   don't end up in trial with a document that hasn't been

11   produced at the criminal case and someone objecting to it

12   and saying, well, you know, this wasn't actually -- this

13   isn't legitimate or authenticated.

14        But I'm -- I'm confident that if the Court does not

15   stay this matter that we will be able to work through most

16   of those disputes and hopefully, if -- if necessary, we'll

17   present a limited number of discovery disputes to the Court

18   for resolution.

19             THE COURT:  All right.  It sounds to me, because

20   you're still working on the document discovery and because I

21   have some work to do with regard to some further research

22   based on the cases that have been cited -- I did have an

23   opportunity to read the briefing and the affidavits of all

24   parties, and I appreciate you're being prompt with those,

25   but I certainly haven't exhausted my research.  So this is

 1  what I want to do today.  First of all, I'd like to hear

 2  from both of you, both sides, to see if there's any

 3  resolution that we can come to that you all have -- can

 4  suggest.  And, secondly, I will tell you what I want to do

 5  if -- if neither one of those options is satisfactory.

 6      So I'll start with Mr. Evans.  You alluded to the fact

 7  that you may have some kind of a resolution to suggest, and

 8  I'll hear that now.

 9          MR. EVANS:  Thank you, Your Honor.  This is

10  Neil Evans.  I propose that we postpone the depositions

11  until the week of September 16th, with an agreement from the

12  defense that I don't have to reserve the subpoenas.  The

13  Court did not order a stay.  The Government will serve

14  written interrogatories, pursuant to Rule 33, by next

15  Friday, August 2nd.  The defendants will file or provide

16  objections or privilege assertions by August 23rd.

17      And then I think if the -- that -- I think that does a

18  couple of things.  One, it obviates the need for an

19  immediate stay or a protective order; two, it allows all of

20  us to put, you know, meat to the bones, if you will, rather

21  than speaking hypothetically, to these potential Fifth

22  Amendment privilege assertions.

23      Obviously, I don't think that all my questions are

24  subject to a Fifth -- potential questions are going to be

25  subject to a Fifth Amendment privilege, and I don't think a

blanket stay of the case is appropriate, nor will all my

questions necessarily be objectionable.  So I think that

gets some substance to the discussion.

Again, it obviates the need for an immediate stay or a

protective order, and it will allow the Court someday,

hopefully between, let's say, the August 23rd responses and

my proposed September 16th depositions, to -- to make some

rulings.

I think the other benefit to the postponing of the

depositions until that week is that I think Steven Hammond

will be released from the Bureau of Prisons, so he will be

back in Burns.  And, initially, Mr. Baum and I or Mr. Smith

and I have been talking about taking the BLM employees'

depositions at or around the same time.  For various

reasons, that didn't work out.  I think, again, with some

more discovery, we can probably schedule the BLM employees

around that same time and can save us all some resources.

I think that the overall advantage is that the parties

in the courtroom know what the issues are exactly, and,

again, we can get to those other -- those other deponents.

THE COURT:  All right.  Now, Mr. Smith, do you

have a response to this?  Is this something you discussed

with Mr. Evans?

MR. SMITH:  Thank you, Your Honor.  This is

Mr. Smith.  We did not discuss this specific proposal.  I do

have a partial response that I want the Court to make sure it considers, to the extent that the Court ultimately denies the motion for a stay and my folks have to respond to written interrogatories or depositions.  The problem in this situation is not just the fact that if they answer questions they can be used against them in the criminal proceeding. The other problem is that if they assert their Fifth Amendment rights in the civil proceeding, the fact that they asserted those rights, of course, can be evidenced in the civil proceeding and inferences can be drawn from that evidence.

     What I would represent to the Court is that we -- meaning Hammond Ranches, Inc., and the defendants -- would like to provide testimony, but we would like to provide testimony without exposing the folks involved to potential criminal liability.

     The Court, I think, has authority to prevent the Government from -- from bringing up the fact that somebody raised their Fifth Amendment right when the matter is actually tried.

     And so what might happen here, Your Honor, if the Court follows Mr. Evans's proposal is that there would be interrogatories, there might be some questions answered, there might be some where the Fifth Amendment is raised, and we want the Court to be cognizant of the fact that when the

1    danger -- if -- if at some point the danger in the minds of

2    the folks involved with the criminal prosecution or

3    increased sentencing is listed or is gone, we're going to

4    want the ability to withdraw our assertion of the Fifth

5    Amendment without any adverse consequences.

6         So I just wanted the Court to be aware of that.

7              THE COURT:  Well, I'm aware of the risk to the

8    defendants in the civil matter.  And here's what I'd like to

9    do:  I think Mr. Evans's proposed resolution makes some

10   sense.  I think it's ambitious with regards to the

11   deadlines, and so I -- especially the -- the responses.  If

12   Mr. Evans can serve written interrogatories by August 2nd,

13   and I know that generally interrogatories are limited unless

14   the Court rules otherwise, and, Mr. Evans, would you want to

15   ask the Court to allow more than -- I think it's 25

16   questions on interrogatories.

17             MR. EVANS:  Well, I think 20 -- I may regret this

18   as I'm drafting them next week, but I think 25 should

19   probably be sufficient.  Let's say if I can get 40 to

20   Dwight, Steven, and the corporation, I think that would --

21   that would certainly give us the ability to look at the

22   substantive questions and responses and -- and stop dealing

23   with this issue in the hypothetical.

24             THE COURT:  And, Mr. Smith, would you object to

25   that?

1          MR. SMITH:  Him having 40 rather than 20?  No, I

2     don't object to that.

3          THE COURT:  Or 25.  I don't know if it's 20 or 25.

4          MR. SMITH:  It's 25.

5          THE COURT:  I would -- because there's quite a few

6     questions being allowed, I would then allow you until at

7     least September 3rd -- September 2nd is Labor Day --

8     September 3rd to respond.  That gives you 30 days.

9          And to the extent that you raise the privilege, then

10    I -- I want, you know, you to make sure you do that in the

11    questions that are propounded.

12         I think it's a good -- I think it's a good proposal.

13    I'm not -- I'm not going -- I'm not going to order a stay

14    right now.  However, I am going to review the cases that

15    have been suggested, and I'm going to -- I'm going to go

16    ahead and take this under -- put it under advisement and

17    perhaps the issues will be resolved with -- with the use of

18    the interrogatories.

19         The other thing I want Mr. Smith to do, because he

20    raised this issue, is provide me the authority to exclude

21    evidence at trial with regard to the claim of the Fifth

22    Amendment privilege.

23         Can you do that for me, Mr. Smith?

24         MR. SMITH:  Yes, Your Honor, I can do that for

25    you.

1         THE COURT:  Give me a supplemental brief.  I'll

2    allow Mr. Evans to respond.

3       So I'd like that brief at least by the time -- I'd like

4    that brief by September 3rd.  Or, let's say -- let's use the

5    August 23rd date, and then we'll all have the benefit of

6    that briefing.  Okay.

7         MR. SMITH:  Okay.  Your Honor.

8         THE COURT:  Is that okay with you, Mr. Evans?

9         MR. EVANS:  Yes, Your Honor.

10        THE COURT:  And then you can respond to it.  I'll

11   let you respond within seven days of that brief.

12        MR. SMITH:  Your Honor, this is Mr. Smith.

13        THE COURT:  Yes.

14        MR. SMITH:  Our motion for a protective order,

15   which sought to cancel the August 1st depositions, is that

16   granted?  I think that's all it sought.

17        THE COURT:  I think Mr. Evans recognizes that the

18   depositions will not occur, so it is granted.  So the

19   depositions will not occur.  And to the extent that the

20   motion requests only that, that is granted.

21        MR. SMITH:  Thank you, Your Honor.  And as the

22   Court considers this matter and takes it under advisement,

23   there was no formal oral argument given, but some of the

24   issues that the Court has raised are related to some of the

25   cases we cited in our brief which deal with situations where

1    the Government, by seeing which questions the person refuses

2    to answer under the Fifth Amendment, can then notice weak

3    spots in the case, and that's an issue that's raised, and I

4    am just making the Court aware of it.  As we review

5    interrogatories, we'll do the best that we can, but I

6    anticipate that that may be an issue.

7                THE COURT:  Okay.

8                MR. BLACKMAN:  And, Your Honor, this is

9    Marc Blackman.

10               THE COURT:  Yes.

11               MR. BLACKMAN:  I just want to note for the record

12   that it seems very unlikely that the status of the

13   Government's appeal would be any different on September 3rd

14   than it is today.  The case is at issue.  It's been fully

15   briefed.  We do not have a notice from the Court setting

16   oral argument.

17               THE COURT:  Okay.

18               MR. BLACKMAN:  And I believe it is more likely

19   than not that the Ninth Circuit will have this matter before

20   it for at least several months beyond September.

21               THE COURT:  Oh, I see.  That's probably accurate,

22   Mr. Blackman.  You know it would be helpful to me,

23   Mr. Blackman, if you would send me -- has it been fully

24   briefed?

25               MR. BLACKMAN:  Yes.

1      THE COURT:  Would you send me the briefs in the

2  matter?  Can you send them by email; .pdf?

3      MR. BLACKMAN:  We can do that for the briefs

4  themselves.  As far as the excerpts of record, I think the

5  Government's excerpts of record was seven volumes.

6      THE COURT:  Oh, well, I think I only need the

7  briefs which outline --

8      MR. BLACKMAN:  Okay.

9      THE COURT:  I don't want to read seven volumes.  I

10  was here for part of that trial, and I can guarantee you I

11  don't want to read seven volumes of record.  But I do want

12  to have a clear understanding of the issues that are raised

13  on appeal.

14      MR. BLACKMAN:  Very well.

15      MR. EVANS:  Your Honor, this is Neil Evans.

16      THE COURT:  Yes.

17      MR. EVANS:  I have a couple of issues.  One is

18  relatively minor, but to the extent that I offered to

19  postpone the depositions until September 16th week, it seems

20  that the protective order request is -- is moot.  And --

21      THE COURT:  Yeah.

22      MR. EVANS:  And I'd just hate to have on the

23  record, for later, misinterpretation by somebody that the

24  Court had to grant a protective order against depositions,

25  so I'd ask the Court just rendering it moot, and so

1   that -- that raises the question of are they indefinitely

2   postponed or should it -- I would prefer to set and say that

3   we have a date or a week for the depositions so that the

4   stay is a nonissue.

5           THE COURT:  I tend to agree with you, Mr. Evans,

6   and I was going to say it was the -- the issue of the

7   protective order is moot, but I honestly, because you have

8   acquiesced and have taken that off the calendar, it's -- the

9   protective order is granted, but I think in the interest of

10  accommodation of the parties and keeping this going forward,

11  the minute order will reflect that because the Government

12  has taken the deposition dates off, the issue is moot.  But

13  the subpoenas then are moot, and I would like to see some

14  cooperation with regard to the depositions so that subpoenas

15  will not have to be issued.

16          MR. SMITH:  Your Honor, this is Brent Smith.  I

17  think that we can do that.  I cannot make assurances to

18  Mr. Evans about Earlyna Hammond.

19          THE COURT:  Okay.

20          MR. SMITH:  I don't know why I would have a

21  problem getting her there.

22          THE COURT:  Okay.  I think that's a fairly good

23  compromise with regard to that.  So the issue of the

24  protective order is -- the depositions are taken off, and so

25  the issue of the protective order is moot.

1        No -- the -- the parties will collaborate on

2   depositions -- further depositions.

3        And Mr. Evans, because I've extended the time for the

4   interrogatories, I think the time for the depositions

5   perhaps should be extended.  And I'm going to say

6   until October 16th or mid October.  I don't have my calendar

7   right in front of me.  If you need more time and can agree

8   on an extension, I would certainly grant it.  Okay?

9             MR. EVANS:  Thank you, Your Honor.  I do agree

10  with Mr. Smith that we -- we have been talking, and we can

11  work through these things.  Hopefully --

12            THE COURT:  Very good.

13            MR. EVANS:  -- as Mr. Smith indicates, there will

14  be limited issues for the Court to address with regard to

15  discovery.

16            THE COURT:  Oh, I appreciate that, and I

17  appreciate your cooperative effort.  That's what I have come

18  to expect from you gentlemen.

19       So the motion for stay is taken under advisement.  The

20  depositions are -- the protective order, with regard to the

21  depositions -- August 1st were they -- is moot, because the

22  depositions are postponed until October 15th.  And if that

23  ends up being a Saturday or a Sunday, just change it to 16th

24  or --

25            MR. EVANS:  That's a Tuesday after the

1    Monday -- after the Monday Columbus Day federal holiday, so

2    that date actually works.

3           THE COURT:  All right.  Okay.  All right.  The

4    Government will serve written interrogatories to defendants

5    by August 2nd.  Did I say August 2nd?

6           DEPUTY COURTROOM CLERK:  Yes.

7           THE COURT:  Yes.

8           MR. EVANS:  Yes, Your Honor.

9           THE COURT:  And the responses are due

10    September 3rd.

11      Mr. Smith will provide a supplemental brief with regard

12    to using testimony at trial on the assertion of the Fifth

13    Amendment privilege, and I -- if further briefing is

14    necessary, I'm going to let the parties know by email.

15    Okay.  I may have questions.

16           MR. EVANS:  Thank you.  This is Neil Evans on

17    behalf of the United States.

18           THE COURT:  So have I covered everything now,

19    Michelle, for the minute order?

20           DEPUTY COURTROOM CLERK:  Yes.  Thank you.

21           THE COURT:  Okay.  So if, indeed, I need some help

22    with regard to further briefing, I'll let the parties know.

23    Either Jenica will or -- it will probably be Jenica, okay.

24    And I'll try to articulate exactly what help I need.  Okay.

25           MR. EVANS:  Thank you, Your Honor.

```
 1              MR. BLACKMAN:  Your Honor, Marc Blackman here.
 2              THE COURT:  Yes.
 3              MR. BLACKMAN:  Do you want me to email those
 4    briefs to your judicial assistant?
 5              THE COURT:  You know, just email them to me.  I
 6    think you have my email address, because I think I've gotten
 7    some emails from you by mistake.
 8              MR. BLACKMAN:  Okay.  I will.
 9              THE COURT:  Do you have an assistant named Pat?
10              MR. BLACKMAN:  I do, and I -- I believe, because
11    of that, I deleted you.
12              THE COURT:  Oh, okay.  It's the -- it's
13    pat_sullivan@ord.uscourts.gov.
14              MR. BLACKMAN:  All right.  Thank you.
15              THE COURT:  And I think it's just more expeditious
16    just to send them to me directly.
17              MR. BLACKMAN:  All right.  Thank you.
18              THE COURT:  Okay.  They won't be filed in the
19    case.  And I just need them to -- just to familiarize myself
20    with what's being appealed.  Okay.
21              MR. BLACKMAN:  Very good.
22              MR. EVANS:  Very good, Your Honor.
23              THE COURT:  Is there anything else I can help with
24    today?
25              MR. EVANS:  Nothing from the Government,
```

1    Your Honor.   Thank you.

2              THE COURT:   Well, thank you.   And I hope you all

3    have a nice cool weekend.

4              MR. SMITH:   Thanks.   Your Honor.

5              MR. BLACKMAN:   Thank you.

6              MR. EVANS:   Thank you.

7              THE COURT:   Thank you.

8                        (Hearing concluded.)

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1                     C E R T I F I C A T E

2

3

4    UNITED STATES OF AMERICA,        )
                                      )
5                    Plaintiff,       )Case No. 2:11-CV-00823-SU
                                      )
6                    v.               )
                                      )
7    HAMMOND RANCHES, INC., an Oregon )
     Corporation,                     )
8                                     )
                     Defendant.       )
9    _____)

10

11          I certify, by signing below, that the foregoing is

12   a true and correct transcript of the record of proceedings

13   in the above-entitled cause.  A transcript without an

14   original signature, conformed signature, or digitally signed

15   signature is not certified.

16

17   /s/Jill L. Erwin, CSR, RMR, RDR, CRR
     _____
18
     Official Court Reporter          Date: August 20, 2013
19

20

21

22

23

24

25